IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL EUGENE FISHER, | ) | CASE NO. 1:10 cv 964 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

### Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Carl Eugene Fisher, for disability insurance benefits.[1]  The parties have consented to magistrate judge's jurisdiction.[2]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Fisher had severe impairments consisting of degenerative joint disease of the back and leg and diabetes mellitus with lower extremity neuropathy.[3]  The ALJ made the following finding regarding Fisher's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b).  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.

---

[1] ECF # 1.

[2] ECF # 23.

[3] ECF # 11, Transcript ("Tr.") at 13.

Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, we determined that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.

Specifically, the evidence supports that the claimant is capable of lifting and carrying 20 pounds occasionally, 10 pounds frequently; sitting at least eight hours out of eight and standing and/or walking six hours out of eight; however, he should be afforded the opportunity to sit or stand at will. The claimant can perform tasks requiring occasional bending, stooping and squatting; however he cannot climb, perform overhead work or push and pull more than 10 pounds occasionally. The claimant is limited to simple, repetitive job tasks in a low stress work environment.[4]

Based on this residual functional capacity analysis, the ALJ found Fisher incapable of performing his past relevant work as a truck driver.[5]

Applying the medical-vocational grids in Appendix 2 of the regulations and relying on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Fisher could perform.[6] The ALJ, therefore, found Fisher not under a disability.[7]

---

[4] *Id.* at 14.

[5] *Id.* at 17.

[6] *Id.*

[7] *Id.* at 18.

In his brief on the merits, Fisher argues for reversal of the Commissioner's decision on the grounds that it does not have the support of substantial evidence in the administrative record.[8]  Specifically, Fisher contends that:  (1) the ALJ failed to consider the combined effects of Fisher's impairments and medications on his functioning;[9] (2) the ALJ's evaluation of the severity of Fisher's back pain improperly used a subjective "sit and squirm" test;[10] (3) the ALJ failed to give proper weight to the opinion of Dr. Anil Patel, Fisher's treating physician;[11] and (4) the ALJ failed to address the "exacerbating effects" of Fisher's obesity on his impairments.[12]

As to the treating physician argument raised here, Fisher essentially maintains that although Dr. Patel's opinion as to the nature and severity of Fisher's impairment was not accompanied by direct citations to the supporting medical evidence, that opinion was consistent with the medical record and based on Dr. Patel's five-year history of treating Fisher.[13] Such circumstances, Fisher asserts, along with the fact that a state reviewing

---

[8] ECF # 12.

[9] *Id*. at 12-15.

[10] *Id*. at 15.

[11] *Id*. at 16-17.

[12] *Id*. at 17-18.

[13] *Id*. at 16.

physician's report (which the ALJ relied on) was not based on a complete medical file, argue that the ALJ did not comply with the requirement of the treating physician rule.[14]

I conclude that the ALJ's residual functional capacity finding does not have the support of substantial evidence.  The case must be remanded for reconsideration of that finding.

## Analysis

### A.  Standard of review

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[15]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[16]

---

[14] *Id.* at 17.

[15] 20 C.F.R. § 404.1527(d)(2).

[16] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[17] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[18]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[19]  Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[20] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[21]  In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[22]

In *Wilson v. Commissioner of Social Security*,[23] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[17] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[18] *Id.*

[19] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[20] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[21] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[22] *Id.* at 535.

[23] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[24]  The court noted that the regulation expressly

contains a "good reasons" requirement.[25]  The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[26]

The court went on to hold that the failure to articulate good reasons for discounting

the treating source's opinion is not harmless error.[27]  It drew a distinction between a

regulation that bestows procedural benefits upon a party and one promulgated for the orderly

transaction of the agency's business.[28]  The former confers a substantial, procedural right on

the party invoking it that cannot be set aside for harmless error.[29]  It concluded that the

requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[24] *Id.* at 544.

[25] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[26] *Id.* at 546.

[27] *Id.*

[28] *Id.*

[29] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[30]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[31]  Second, the ALJ must identify for the record evidence supporting that finding."[32]  Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[33]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.

---

[30] *Id.*

[31] *Wilson*, 378 F.3d at 546.

[32] *Id.*

[33] *Id.*

Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in § 1527(d)(1)-(6).

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[34] set out some standards for how ALJ's should employ the treating physician rule.  In *Blakley*, the ALJ failed to mention the opinion of one treating physician altogether;[35] discounted the opinion of another as inconsistent with other evidence of record;[36] and failed to disclose whether the opinion of a third was weighed as a treating physician.[37]  On these facts showing non-compliance by the ALJ with the rule as to treating physicians, *Blakley* expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[38]  Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[39]

---

[34] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009).

[35] *Id*. at 407-08.

[36] *Id*. at 408.

[37] *Id*.

[38] *Id*. at 409-10.

[39] *Id*. at 410.

**B.      Application of the standard**

This case presents the narrow issue of whether the ALJ's residual functional capacity finding has the support of substantial evidence for a closed period from approximately August of 2004, when Fisher underwent an L2-5 laminectomy, an L4-5 posterior lumbar inner body fusion, and the release of a tethered spinal cord;[40] and sometime on or after October 5, 2005, when Fisher underwent a re-do lumbar laminectomy and foraminotomies of L2, L3, and L4.[41]

The ALJ found that, for the entire period from the alleged onset date in October of 2001 through the date of decision, July 21, 2008, Fisher had the residual functional capacity to perform a limited range of light work, with occasional bending, stooping, and squatting; climbing, performing overhead work, or pushing or pulling more than nine or ten pounds occasionally; and limitations to simple, repetitive tasks in a low stress work environment.[42]

But, the only residual functional capacity opinion, other than that of the treating physician, is the state agency reviewing physician's report issued on June 23, 2006.[43]  This evaluation provides for light work with occasional limitations on climbing ramps and stairs, stooping, and crouching.  The evaluation does not clearly indicate if the reviewer had the

---

[40] Tr. at 182.

[41] *Id.* at 151.

[42] *Id.* at 14.

[43] *Id.* at 210-17.

benefit of the surgical records.  In fact, as noted above, the report states that the reviewer did not have treating or examining source statements.[44]

In discussing the various source evaluations, the ALJ generally acknowledges those of the treating physician, Anil Patel, M.D., but dismisses them because Dr. Patel ultimately concluded that Fisher should be approved for disability – a legal determination reserved for the Commissioner.[45]  In that regard, the ALJ observes, "I am not bound to accept even a treating physician's conclusion as to disability when it is not well supported by detailed, clinical, and/or diagnostic evidence or it is inconsistent with other substantial evidence in the case record."[46]

As Fisher notes, during the time period from April 2002 to May 2003, Dr. Patel completed multiple residual functional capacity evaluation forms, which did conclude that Fisher was totally disabled.[47]  Those evaluations placed limitations on such activities as lifting, bending, pulling, pushing, and squatting because of his back problems.  Although these evaluations predate Fisher's first surgery, they nevertheless document the need for that procedure.  Furthermore, as treating physician evaluations, they require under the regulations that the ALJ assign them weight and articulate good reasons for the weight assigned.  In that

---

[44] *Id.* at 216.

[45] *Id.* at 16.

[46] *Id.*

[47] *Id.* at 324, 404, 405-06, 410, 414, 417, 418-19, and.420-22.

-10-

regard, the generalized statement made by the ALJ in the decision does not meet the standards in *Blakley*[48] and subsequent authority.

Further, in reviewing the transcript, I see nothing that would support applying the ALJ's residual functional capacity finding to the time period between the two surgeries. The Commissioner's attorney at the oral argument places reliance on a note from the neurosurgeon on April 25, 2005, that Fisher has had a recurrence of back and lower leg symptoms.[49] She argues that the use of the term "recurrence" indicates that Fisher had previously made a complete recovery after the first surgery. This isolated reference does not support extending the residual functional capacity assessment to the time period between the surgeries.

The ALJ gives the state agency reviewing physician's opinion "significant weight" but notes that he is affording Fisher the benefit of the doubt and imposing a more restrictive residual functional capacity finding.[50] Because it is unclear what records the state agency reviewing physician examined, such reliance poses a problem. If the state agency reviewing physician did not have the benefit of the records regarding the two surgeries, then the record – and the ALJ – would have no opinion regarding the functional capabilities of Fisher during that time period.

---

[48] *Blakley*, 581 F.3d at 410.

[49] Tr. at 174.

[50] *Id.* at 17.

It does appear that after the second surgery Fisher did improve.  In October of 2005, Dr. Patel reported that Fisher was doing well and ambulating well and that numbness in his leg was going away.[51]  There are no medical records indicating any further significant treatment for Fisher's back condition following the second surgery.

On the basis of the foregoing, I conclude that there should be a remand for reevaluation of the residual functional capacity finding.  In particular, on remand this finding must expressly address Fisher's work-related limitations before the surgeries, between the two surgeries, and following the second surgery.  Moreover, when making these findings in all cases:  (1) any decision to afford less than controlling weight to the opinion of a treating source in favor of that of a reviewing source must be clearly articulated, and (2) any findings as to the severity of pain or the credibility of the claimant must be strictly grounded in the law applicable to such determinations.

## Conclusion

Accordingly, for the reasons stated, this matter is remanded for further proceedings consistent with this opinion.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[52] the Court concludes that the position of the Commissioner was substantially justified.

---

[51] *Id.* at 287.

[52] 28 U.S.C. § 2412(d)(1)(A).

-12-

IT IS SO ORDERED.


Dated:  November 8, 2011                    s/ William H. Baughman, Jr.
                                           United States Magistrate Judge